## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHANG'S DYNASTY, LLC., | **JURY TRIAL DEMANDED** |
| Plaintiff, | Case No.: |
| v. | Honorable: |
| UD 1; and  UD 2, | |
| Defendants. | |

## PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COMES NOW Plaintiff CHANG'S DYNASTY, LLC and, for its Complaint, hereby states the following:

### INTRODUCTION

1.     This is a civil action wherein Plaintiff seeks to recover funds related to the purchase of a nightclub that were fraudulently obtained by Defendants via, among other things, racketeering activities, specifically, fraud by wire in violation of 18 U.S.C. §§ 1961-62, 1343, and 1956-57. Defendants have unlawfully and fraudulently converted Plaintiff's property and tortiously interfered with a business relationship and contract, in violation of both federal and state law, by, among other things, impersonating the seller of the nightclub and fraudulently inducing Plaintiff into wiring funds for the purchase of the nightclub to an account owned and controlled by Defendants by, among other things, impersonating the seller via email. As a result thereof, Plaintiff seeks $120,000.00 in statutory damages, plus an amount to be demonstrated at trial in punitive damages, as well as reasonable attorneys' fees and costs incurred in bringing this action, from Defendants UD 1 and UD 2 jointly and severally.

2.     Plaintiff also seeks, to the extent any portion of the $40,000.00 in unrecovered funds that were fraudulently obtained by Defendants from Plaintiff remain in a financial institution or other type of financial account, injunctive relief to freeze said funds until such a time as the Court can decide this matter on the merits.

3.     Because this matter involves fraudulently received funds, because such funds are inherently fungible, and because filings are public documents, Plaintiffs file this matter leaving the Defendants unnamed so as to avoid tipping them off that Plaintiffs are attempting to locate said funds. Plaintiffs also intend to file an ex parte application for limited discovery to ascertain the location of the fraudulently obtained funds, an ex parte application for a protective order to keep the Defendants anonymous until such funds are identified and, hopefully, frozen, and an application for a Temporary Restraining Order and preliminary injunction to freeze the funds, if found.

## JURISDICTION AND VENUE

4.     This Court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because this action arises under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, particularly under 18 U.S.C. § 1964(c).

5.     This Court has supplemental jurisdiction over the state law claims raised herein pursuant to 28 U.S.C. § 1367(a) because the state law claims are so closely related to the RICO claims that they form part of the same case or controversy because the acts giving rise to the RICO claim are the same acts that give rise to the state law claims such that the state and RICO claims have a common nucleus of operative facts.

6.     No other action, civil or criminal, is pending in any state court involving Plaintiff regarding the activities and events giving rise to this action.

7.    Pursuant to 28 U.S.C. § 1391(b), venue in this Court is proper because 1) all Defendants reside in the Commonwealth of Pennsylvania and reside within the Eastern District of Pennsylvania (Lehigh and Northampton Counties) and 2) the injury complained of and acts causing that injury occurred in the Eastern District of Pennsylvania.

## PARTIES

8.    Plaintiff Chang's Dynasty, LLC is a Nevada Limited Liability Company duly organized and authorized to do business in the State of Nevada.

9.    Defendant UD 1 is an adult resident of the Commonwealth of Pennsylvania and, upon information and belief, resides in Bethlehem, Pennsylvania.

10.    Defendant UD 2 is a Pennsylvania Corporation duly organized and authorized to do business in the Commonwealth of Pennsylvania. UD 2 does business in Macungie, Pennsylvania.

## GENERAL ALLEGATIONS

11.    Plaintiff Chang's Dynasty, LLC is wholly owned by Mr. Alan Chang.

12.    ARC Production, LLC is an Indiana limited liability company wholly owned by Mr. Alan Chang. A true and accurate copy of the business information for ARC Production LLC. taken from the Indiana Secretary of State website is attached hereto as **Exhibit A** and is hereby incorporated by reference as though fully set forth herein.

13.    Prior to August 16, 2022, Todd Laury owned WTL Management, LLC, an Indiana Limited Liability Company, which did business as "Sirens," a nightclub, located at 1525 Production Road in Fort Wayne, Indiana.

14.    Plaintiff was the payor for the purchase of Sirens.

15.    In early 2022, Todd Laury and Alan Chang began discussing the sale of Sirens from Todd Laury to Alan Chang. The two agreed on a price and executed an asset purchase agreement. A few months later, after the money for the purchase had

been wired, Todd Laury and Alan Change realized that the purchase agreement for Sirens had to be re-worded. That is why the date of the purchase agreement is October 11, 2022, and not August 16, 2022, the date on which the wire was sent.

16.      On October 11, 2022, Alan Chang, on behalf of ARC Production, LLC, executed an asset purchase agreement with WTL Management, LLC for the purchase of Sirens. A true and accurate copy of the aforementioned asset purchase agreement is attached hereto as **Exhibit B**, and is hereby incorporated by reference as though fully set forth herein.

17.      The purchase price of Sirens was $350.000.

18.      Todd   Laury's   email   address   was,   at   all   times   relevant, laury.todd@[omitted].

19.      During the process of purchasing Sirens, Plaintiff's owner, Mr. Alan Chang, and its Chief of Staff, Ms. Sandra Do, had been in frequent email contact with Todd Laury. For example, between August 7 and August 11, 2022, Plaintiff's owner, Chief of Staff, and Todd Laury had exchanged multiple emails regarding the utilities for Sirens. A true and accurate copy, except for the following redactions: 1) a portion of Ms. Do's email address, 2) Ms. Do's cell phone number, 3) the account number for Siren's power service, and 4) a portion of Mr. Chang's email address, of the aforementioned email exchanges is attached hereto as **Exhibit C**, and is hereby incorporated by reference as though set forth herein.

20.      At some point before August 16, 2022, upon information and belief, Defendants caused a malware computer virus to be placed on Plaintiff's Chief of Staff's computer that allowed Defendants to intercept and read Plaintiff's Chief of Staff's email traffic. Plaintiff and its agents were unaware of this computer virus until after the fraud described herein had occurred.

21.      Simultaneously with the emails exchanged with Todd Laury attached hereto as **Ex. C** regarding utilities, Plaintiff's owner and Chief of Staff received emails

from, and sent emails to, laury.tod@[omitted] (hereafter, the "Imposter"), regarding various other utilities for Sirens. A true and accurate copy, except for the following redactions: 1) Ms. Do's cell phone number, 2) a portion of Ms. Do's email address, and 3) a portion of Mr. Chang's email address, of the aforementioned email exchanges is attached hereto as **Exhibit D**, and is hereby incorporated by reference as though fully set forth herein.

22.     Todd Laury does not own or use the email address laury.tod@[omitted].

23.     Upon information and belief, the owner and/or user of the Imposter email was UD 1 and/or another employee or authorized agent of UD 2 acting on behalf of and for the benefit of Defendant UD 2.

24.     Upon information and belief, the Imposter emails attached hereto as **Ex. D**, were sent to/exchanged with Plaintiff's owner and Chief of Staff in order to lull the same into a false sense of security and belief that they were communicating with the actual Todd Laury about the purchase of Sirens when, in fact, they were not communicating with Todd Laury, but rather, were communicating with Defendant UD 1 on behalf of UD 2.

25.     On August 9, 2022, at 9:33 AM the real Todd Laury sent, from his email, Plaintiff's owner and Chief of Staff an email, with wiring instructions for the closing of Sirens. The email began as follows: "Alan and Sandra, Please find below the wiring instructions for closing on the Fort Wayne club." The "Fort Wayne club" being Sirens. Several hours later, at 1:56 PM, Plaintiff's owner responded that Plaintiff would wire the money once the closing documents were received. A true and accurate copy, except for the following redactions: 1) Ms. Do's cell phone number, 2) a portion of Ms. Do's email address, 3) a portion of Mr. Chang's email address, 4) Mr. Laury's address, and 5), Mr. Laury's routing and checking numbers, of the aforementioned email exchange is attached hereto as **Exhibit E**, and is hereby incorporated by reference as though fully set forth herein. The bank information Mr. Laury provided via the email

attached hereto as **Ex. E** was for the Bank of the Ozarks with account number XXX-XXX-4873.

26.    On August 15, 2022, at 11:18 AM, Plaintiff's owner and Chief of Staff received an email from the Imposter email (hereafter, the "Fraud Email"). The Fraud Email copied the same verbiage from the real Todd Laury's previous email with wiring instructions (**Ex. E**): "Alan and Sandra, Please find below the wiring instructions for closing on the Fort Wayne Club." The Fraud Email provided TD Bank account number XXX-XXX-0036 as the account to which Plaintiff was to wire the money. A true and accurate copy, except for the following redactions: 1) Ms. Do's cell phone number, 2) a portion of Ms. Do's email address, 3) a portion of Mr. Chang's email address, and 4) the first six numbers of the bank account number provided by the Imposter, of the Fraud Email is attached hereto as **Exhibit F**, and is hereby incorporated by reference as though fully set forth herein.

27.    On August 15, 2022, at 12:09 PM, believing he was making payment to Todd Laury and/or WTL Management, LLC, for closing of the Sirens asset purchase, [*see* **Ex. B**], Plaintiff's owner wired $250,000.00 from his bank, First Foundation Bank, to TD Bank account number XXX-XXX-0036 in accordance with the instructions provided in the Fraud email, which, at the time, was not known to Plaintiff, its owner, or its Chief of Staff to be an imposter/fraudulent email. A true and accurate copy, except for the following redactions: 1) the account number and balance, 2) all transactions and associated information except for the aforementioned August 15, 2022, wire, and 3) Chang's Dynasty, LLC's address, of the First Foundation Bank account statement for Chang's Dynasty, LLC reflecting this transfer with irrelevant materials redacted is attached hereto as **Exhibit G**, and is hereby incorporated by reference as though fully set forth herein.

28.    At 3:09 PM on August 15, 2022, Plaintiff's owner replied to the Fraud Email stating that the wire had been sent. Plaintiff's owner's email's salutation was

"Todd," indicating that Plaintiff's owner believed he was communicating with the real Todd Laury and not the Imposter. A true and accurate copy, except for the following redactions: 1) Ms. Chang's cell phone number, 2) a portion of Mr. Chang's email address, and 3) the first six numbers of the bank account number provided by the Imposter, of the aforementioned email is attached hereto as **Exhibit H**, and is hereby incorporated by reference as though fully set forth herein.

29.     At 3:23 PM Plaintiff's Chief of Staff replied to the Fraud Email stating that the wire had been sent. Plaintiff's Chief of Staff's salutation was "Todd," indicating that Ms. Do believed she was communicating with the real Todd Laury and not the imposter. [**Ex. F**].

30.     At all relevant times, Todd Laury and/or WTL Management, LLC did not have possession, custody, or control over TD Bank account number XXX-XXX-0036.

31.     Upon information and belief Defendant UD 2, Inc. was, on August 16, 2022, the owner of TD Bank account number XXX-XXX-0036. [**Ex. F**].

32.     Defendant UD 1 is the owner or principal of Defendant UD 2.

33.     On August 15, 2022, at approximately 1:25 pm PST, Plaintiff's owner realized the Fraud Email was fraudulent and immediately contacted First Foundation Bank.

34.     Later that day, August 15, 2022, First Foundation Bank contacted TD Bank and advised TD Bank of the fraudulent transaction of $250,000.00 funds into TD Bank account number XXX-XXX-0036.

35.     On August 17, 2022, TD Bank responded to First Foundation Bank that TD Bank account number XXX-XXX-0036 was closed. First Foundation Bank queried TD Bank as to where the funds were transferred from TD Bank account number XXX-XXX-0036, and TD Bank stated that it could not provide additional information on where the money is or where it was transferred.

36.    On August 18, 2022, Plaintiff hired Threat Mitigation Partners, LLC, a Michigan Limited Liability Company, to, among other things, recoup as much of the $250,000.00 as possible, investigate the circumstances surrounding the Fraud Email, and identify the recipient(s) of the $250,000.00.

37.    On August 18, 2022, a complaint was filed with the Federal Bureau of Investigation's IC3 (Internet Crime Complaint Center) website regarding the Fraud Email and Imposter.

38.    On September 14, 2022, TD Bank returned to Plaintiff $210,000.00 of the 250,000.00 fraudulent transfer.

39.    TD Bank has refused to inform Plaintiff where the remaining $40,000.00 was transferred to or who caused the transfer.

40.    Upon information and belief, Defendants transferred the remaining $40,000.00 from TD Bank account number XXX-XXX-0036 to another account, or accounts, over which they, or either one of them, own or otherwise exercise dominion and control over.

41.    Upon information and belief, Defendants transferred the remaining $40,000.00 from TD Bank account number XXX-XXX-0036 to another account, or accounts, owned and controlled by third party accomplices of their fraudulent acts, the identity of whom will not be known to Plaintiff unless and until discovery is obtained as to the disposition and location of any remaining funds of the $40,000.00 that Plaintiff was unable to recover.

42.    As of October 5, 2023, UD 2 is an active domestic Pennsylvania corporation with an address in Macungie, Pennsylvania. A true and accurate screenshot, except for the following redactions: 1) UD 2's name and 2) a portion of UD 2's address and registered office, of the Pennsylvania Department of State Bureau of Corporations webpage is attached hereto as **Exhibit I** and is incorporated by reference as though fully set forth herein.

43.     On Defendant UD 2's Articles of Incorporation-For Profit, filed 12/02/2021, Defendant UD 2. listed the return address as: UD 1 at UD 2's address in Macungie, PA 18062 and the document is signed by UD 1. Further, the document lists UD 1 as the sole incorporator of UD 2. A true and accurate copy, except for the following redactions: 1) UD 1's name, 2) a portion of UD 2's address, 3) UD 2's name, and UD 1's signature, 4) UD 2's entity number, and 5) UD 2's DSCB and associated information, of UD 2's Articles of Incorporation-For Profit, which was pulled from the Pennsylvania Department of State Bureau of Corporations website, is attached hereto as **Exhibit J** and is incorporated by reference as through fully set forth herein.

44.     Defendant UD 1 received a $20,832.00 Paycheck Protection Program loan as a "Residential Remodeler" with a location of "Macungie, PA," with the lender listed as Prestamos CDFI, LLC. [*See*, **Exhibit K**, which is a true and accurate, except for the following redactions: 1) UD 1's name and 2) the PPP Loan Number, and 3) the names and loan amounts of the individuals listed under "Similar Nearby Businesses Who Received PPPP Funding, and 4) the URL, download of UD 1's PPP loan information from Federalpay.org, and which is incorporated by reference as though fully set forth herein].

45.     Upon information and belief, Defendant UD 1 has a financial account with Prestamos CDFI, LLC.

## COUNT I

## VIOLATION OF 18 U.S.C. § 1962 RICO

46.     Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

47.     "To state a claim under this statute [18 U.S.C. § 1962(c)], a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Kornea v. J.S.D Mgmt., Inc., 366 F. Supp. 3d 660, 669 (E.D. Pa. 2019) (quoting In re Insurance Brokerage Antitrust Litig., 618 F.3d 300, 362 (3d Cir. 2010)).

48.    Pursuant to 18 U.S.C. § 1961(4), an "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]"

49.    As an incorporated entity, Defendant UD 2 is an "enterprise" within the meaning of 18 U.S.C. § 1961.

50.    As an individual, UD 1 is an "enterprise" within the meaning of 18 U.S.C. § 1961.

51.    As the owner of Defendant UD 2, Defendant UD 1 is "associated" with Defendant UD 2 within the meaning of 18 U.S.C. § 1962(c).

52.    Pursuant to 18 U.S.C. § 1961(3), a "'person includes any individual or entity capable of holding a legal or beneficial interest in property[.]"

53.    As an individual who holds a legal interest in Defendant UD 2, Defendant UD 1 is a "person" within the meaning of 18 U.S.C. § 1961.

54.    Pursuant to 18 U.S.C. § 1961(5), a "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years . . . after the commission of the prior act of racketeering activity[.]"

55.    Pursuant to 18 U.S.C. § 1961(1), as relevant here, "'racketeering activity' means . . . (B) any act which is indictable under any of the following provisions of title `18, United States Code: . . . section 1343 (relating to wire fraud) . . . section 1956 (related to the laundering of monetary instruments) . . . section 1957 (relating to engaging in money transactions in property derived from specified unlawful activity) . . . ."

56.    "A 'pattern of racketeering activity' is established with proof of the commission of at least two acts of racketeering activity (known as predicate acts) within a ten-year period." <u>Kornea</u>, 366 F. Supp. 3d at 670.

***Wire Fraud (18 U.S.C. § 1343)***

57.     "The elements necessary to establish mail or wire fraud are: '(1) the existence of a scheme to defraud; (2) the participation by the defendant in the particular scheme with the specific intent to defraud; and (3) the use of the United States mail or of wire communications in furtherance of the fraudulent scheme.'" <u>Kornea</u>, 366 F. Supp. 3d at 670 (quoting <u>United States v. Syme</u>, 276 F.3d 131, 142 n.3 (3d Cir. 2002)); <u>Jacovetti L., P.C. v. Shelton</u>, No. 2:20-CV-00163-JDW, 2020 WL 5211034, at *2 (E.D. Pa. Sept. 1, 2020).

58.     "A scheme to defraud means any deliberate plan of action or course of conduct by which someone intends to deceive or cheat another or by which someone intends to deprive another of something of value." <u>Levine v. First Am. Title Ins. Co.</u>, 682 F. Supp. 2d 442, 462 (E.D. Pa. 2010).

59.     "The scheme to defraud 'need not be fraudulent on its face but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension.'" <u>Jacovetti L., P.C.</u>, 2020 WL 5211034, at *2 (quoting <u>Walter v. Paisades Collection, LLC</u>, 480 F. Supp. 2d 797, 803 (E.D. Pa. 2007)).

60.     "Deceitful statements, half-truths, or the knowing concealment of material facts are all actionable under the mail and wire fraud statutes." <u>Levine</u>, 682 F. Supp. 2d at 462.

61.     "Plaintiffs must allege that Defendants acted with an intent to defraud, which is to act knowingly and with the intention to deceive or to cheat." <u>Levine</u>, 682 F. Supp. 2d at 462.

62.     Defendant UD 1 deliberately engaged in a scheme or artifice to defraud Plaintiff for the purpose of obtaining money or property through, but not limited to, the following acts:

a.      Upon information and belief, causing malware to be placed on Plaintiff's computer system that permitted Defendant UD 1 to, among other things, monitor and intercept Plaintiff's email messages;

b.      Causing the emails in the email chain attached hereto as **Ex. D**, which impersonates Todd Laury, who was known to Plaintiff and who Plaintiff had contacted for the purchase of Sirens, to be sent to Plaintiff;

c.      Misrepresenting that the emails in the email chain attached hereto as **Ex. D**, were sent by Todd Laury by, among other things, signing the emails "TL" and "Todd Laury";

d.      Misrepresenting that the Fraud Email, **Ex. F**, came from Todd Laury, by, among other things, mirroring the verbiage used by Todd Laury in his initial wiring instructions email, and signing the Fraud Email "Todd Laury";

e.      Requesting $250,000.00 be sent from Plaintiff to TD Bank account number XXX-XXX-0036, over which, upon information and belief, Defendant UD 1 maintains possession, custody, and/or control, [**Ex. F**];

f.      Deceiving Plaintiff into wiring $250,000.00 to an account over which Defendant UD 1 maintains possession, custody, and/or control, and not Todd Laury, for the closing costs of the asset purchase of Sirens, which belonged to Todd Laury, and not Defendants;

g.      Omitting from the emails hereto as **Ex. D** and the Fraud Email that Todd Laury was not the author, that Todd Laury did not have access to the TD Bank account that the email requested the funds be transferred to, and that Todd Laury had no affiliation with Defendant UD 1; and

h.      Concealing is and Defendant UD 2's true identity from Plaintiff via the Imposter email and deceiving Plaintiff into believing that it was communicating with the real Todd Laury.

63.     Defendant UD 1 completed the acts found in the preceding paragraph within 10 years of the filing of this complaint and with the purpose of converting or stealing the $250,000 for his own benefit.

64.     Defendant UD 2 deliberately engaged in a scheme or artifice to defraud for the purpose of obtaining money or property through, but not limited to, the following acts:

        a.      Upon information and belief, causing malware to be placed on Plaintiff's computer system that permitted Defendant UD 2 to, among other things, monitor and intercept Plaintiff's email messages;

        b.      Causing the emails in the email chain attached hereto as **Ex. D**, which impersonates Todd Laury, who was known to Plaintiff and who Plaintiff had contacted for the purchase of Sirens, to be sent to Plaintiff;

        c.      Misrepresenting that the emails in the email chain attached hereto as **Ex. D**, were sent by Todd Laury by, among other things, signing the emails "TL" and "Todd Laury";

        d.      Misrepresenting that the Fraud Email, **Ex. F**, came from Todd Laury, by, among other things, mirroring the verbiage used by Todd Laury in his initial wiring instructions email, and signing the Fraud Email "Todd Laury";

        e.      Requesting $250,000.00 be sent from Plaintiff to TD Bank account number XXX-XXX-0036, over which, upon information and belief, Defendant UD 2 maintains possession, custody, and/or control;

        f.      Deceiving Plaintiff into wiring $250,000.00 to an account over which Defendant UD 2 maintains possession, custody, and/or control, and not Todd Laury, for the closing costs of the asset purchase of Sirens, which belonged to Todd Laury, and not Defendants;

g.      Omitting from the emails hereto as **Ex. D** and the Fraud Email that Todd Laury was not the author, that Todd Laury did not have access to the account the email requested the funds be transferred to, and that Todd Laury had no affiliation with UD 2; and

h.      Concealing it and Defendant UD 1's true identity from Plaintiff via the Imposter email and deceiving Plaintiff into believing that it was communicating with the real Todd Laury.

65.     Defendant UD 2 completed the acts found in the preceding paragraph within 10 years of the filing of this complaint and with the purpose of converting and/or stealing the $250,000 for its own benefit.

66.     Defendants UD 1 and UD 2 had the specific intent to defraud or cheat Plaintiff as evidenced by, but not limited to, the following actions:

a.      Upon information and belief, intentionally placing the malware on Plaintiff's computer systems;

b.      Intercepting and reading Plaintiff's emails so as to identify the proper time to send their fraudulent request for funds;

c.      Mimicking, almost word for word, the wiring instructions sent by the real Todd Laury in **Ex. E**;

d.      Sending the emails attached hereto as **Ex. D** and representing that the same had been sent by Todd Laury by, among other things, signing the emails "TL" and "Todd Laury";

e.      Creating the imposter email to mirror the real Todd Laury's email and using the same to communicate with Plaintiff about the Sirens purchase, an asset that Defendant neither owned nor had the ability to sell.

f.      Sending the Fraud Email and signing the same "Todd Laury"; and

g.    Monitoring, via the malware, the deal between Plaintiff and Todd Laury and waiting until the time came for payment and causing the Fraud Email to be sent to Plaintiff.

67.    Defendants UD 1 and UD 2 used the internet to transmit their Fraud Email and the emails contained in **Ex. D** to fraudulently induce Plaintiff to wire $250,000 to them.

68.    Defendants UD 1 and UD 2 used the wires to receive the $250,000.00 into TD Bank account number XXX-XXX-0036, over which they (individually or collectively) exercised exclusive possession, custody, and/or control.

69.    To accomplish their scheme to defraud Plaintiff, Defendants UD 1 and UD 2, engaged in interstate commerce by, among other things, sending an email that, upon information and belief, originated from Pennsylvania and was received in Nevada and receiving funds in Pennsylvania that originated in Nevada via a wire transfer. These actions were taken in 2022.

### Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activities (18 U.S.C. § 1957)

70.    "A conviction under  [18 U.S.C. §] 1957 requires a showing (1) that the defendant knowingly engaged in a monetary transaction, (2) that the defendant knew the property involved derived from specified unlawful activity, and (3) that the property was of a value greater than $10,000." United States v. Johnson, 450 F.3d 366, 375 (8th Cir. 2006).

71.    "Section 1957 'is similar to 18 U.S.C. § 1956, but does not require that the recipient exchange or launder the funds, that he have knowledge that the funds were proceeds of a specified unlawful activity, nor that he have any intent to further conceal such an activity.'" United States v. Cefaratti, 221 F.3d 502, 506 (3d Cir. 2000) (quoting U.S.S.G. § 2s1.2, Commentary).

72.     "[T]he term 'monetary transaction' means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument . . . by, through, or to a financial institution (as defined in section 1956) of this title), including any transaction that would be a financial transaction under section 1956(c)(4)(B) of this title[.]" 18 U.S.C. § 1957(f)(1).

73.     "[T]he terms 'specified unlawful activity' and 'proceeds' shall have the meaning given to those terms in section 1956 of this title." 18 U.S.C. § 1957 (f)(3).

74.     "[T]he term 'specified unlawful activity' means—(A) any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31[.]" 18 U.S.C. § 1956(c)(7)(A).

75.     "Section 1957 incorporates the definition of 'specified unlawful activity' in 18 U.S.C. § 1956, which includes, *inter alia*, those acts that constitute 'racketeering activity' under the Racketeer Influenced & Corrupt Organizations Act (RICO). Wire and mail fraud constitute racketeering activities and therefore are 'specified unlawful activities.'" United States v. Cefaratti, 221 F.3d 502, 506 (3d Cir. 2000).

76.     "[T]he term 'proceeds' means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9).

77.     Defendants UD 1 and UD 2 knowingly engaged in a monetary transaction under 18 U.S.C. § 1957 by knowingly withdrawing and/or transferring $40,000.00 of the $250,000.00 that they had criminally and fraudulently obtained from Plaintiff from account number XXX-XXX-0036 to an unknown account at TD Bank, all of which occurred within the United States.

78.     The transfer referenced in the preceding paragraph was conducted electronically through the internet such that both the signal to transfer the funds and the transferred funds themselves travelled across state lines as part of this transfer thereby engaging in interstate commerce.

16

79.     The internet is a modality of interstate commerce.

80.     TD Bank is a financial institution pursuant to 18 U.S.C. § 1957 because, among other things, it is a commercial bank, and it is insured by the FDIC. [**Exhibit L**, which is a true and accurate download of TD Bank's website take on October 5, 2023, via the following URL: https://www.td.com/us/en/personal-banking/universal-footer/fdic-coverage]; *see* 31 U.S.C. § 5312(a)(2).

81.     Defendants UD 1 and UD 2 engaged in specified unlawful activities under 18 U.S.C. § 1956(c)(7)(A), by, among other things, the acts listed in paragraphs 62-69, which are incorporated by reference as though fully set forth herein.

82.     Defendants UD 1 and UD 2 knew that the $40,000.00 they transferred from TD Bank account number XXX-XXX-0036 were derived from Wire Fraud in violation of 18 U.S.C. § 1343 based on their acts of committing wire fraud as specified in paragraphs 62, 64, and 66-69, which are incorporated by reference as though fully set forth herein.

83.     Defendants UD 1 and UD 2 completed the acts found in paragraphs 77-78 and 81-82 within 10 years of the filing of this complaint.

***Laundering of Monetary Instruments (18 U.S.C. § 1956)***

84.     "Under [18 U.S.C.] § 1956, the government must prove: 1) that the defendant conducted or attempted to conduct a financial transaction, 2) which the defendant then knew involved the proceeds of unlawful activity, and 3) with the intent to promote or further unlawful activity." United States v. Caruso, 948 F. Supp. 382, 390 (D.N.J. 1996) (collecting cases).

85.     "[T]he term 'financial transaction' means (A) a transaction in which any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) a transaction involving the use of a financial institution which is engaged in, or

the activities of which affect, interstate or foreign commerce in any way or degree."
18 U.S.C. § 1956(c)(4).

86.     Defendants UD 1 and UD 2 knew that the $250,000.00 they obtained
from Plaintiff was obtained unlawfully as set forth in paragraphs 62-69, which are
incorporated by reference as though fully set forth herein.

87.     Defendants UD 1 and UD 2 withdrew and/or transferred $40,000 of the
unlawfully obtained funds from number XXX-XXX-0036 at TD Bank to an unknown
account.

88.     Defendants UD 1 and UD 2 knew that the $40,000.00 they withdrew
and/or transferred from account number XXX-XXX-0036 at TD Bank were funds
unlawfully obtained from Plaintiff by way of wire fraud as set forth in paragraphs 57-
69, which are incorporated by reference as though fully set forth herein, because of,
among other reasons, Defendants UD 1 and UD 2's actions as specified in paragraphs
62-69, which are incorporated by reference as though fully set forth herein.

89.     Defendants UD 1 and UD 2's withdrawal and/or transfer of the
$40,000.00 transferred from account number XXX-XXX-0036 at TD Bank was done
to conceal and/or disguise the nature and source of the $40,000.00, so as to avoid TD
Bank placing a hold on the total $250,000.00 Plaintiff wired to TD Bank account
number XXX-XXX-0036.

90.     Defendants UD 1 and UD 2, transferred the $40,000 with the intent to
further promote or further unlawful activity including, but not limited to, concealing
their fraudulent money transfer as set forth in Paragraphs 62-69, and to convert the
$40,000 of fraudulently obtained funds.

91.     Upon information and belief, Defendants UD 1 and UD 2, transferred
the $40,000 with the intent to further promote or further unlawful activity including,
but not limited to, using it to pay for further malware coding, opening other banking

accounts to deposit other fraudulently obtained funds, and to repeat their imposter scheme on another victim.

92.    Defendants UD 1 and UD 2 completed the acts found in paragraphs 86-91 within 10 years of the filing of this complaint.

93.    "The limitations period for a federal RICO claim is four years." <u>LabMD Inc. v. Boback</u>, 47 F.4th 164, 179 (3d Cir. 2022) (citing <u>Agency Holding Corp. v. Malley-Duff & Assocs., Inc.</u>, 483 U.S. 143, 156 (1987)).

94.    The limitations period for Count I has not expired.

95.    "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]" 18 U.S.C. § 1964(c); <u>Humphrey v. GlaxoSmithKline PLC</u>, 905 F.3d 694, 698 (3d Cir. 2018) (quoting 18 U.S.C. § 1964(c)) ("A successful [RICO] plaintiff may 'recover threefold the damages.'").

96.    As a direct and proximate result of Defendants' actions described herein, Plaintiff is entitled to recover from Defendants, $120,000.00 in actual/compensatory and liquidated/statutory damages as well as reasonable attorneys' fees and costs of this action in an amount to be demonstrated at trial, pursuant to 18 U.S.C. § 1964(c).

## COUNT II
## CONVERSION

97.    Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

98.    "'Under Pennsylvania law, the elements to the tort of conversion are: (1) deprivation of another's right of property in, or use or possession of, (2) a chattel, (3) without the owner's consent, and (4) without lawful justification.'" <u>Lankard v. Laurel Mountain Midstream Operating, LLC</u>, No. 1367 WDA 2016, 2017 WL 2539844, at *8

(Pa. Super. Ct. June 12, 2017) (quoting <u>Carter v. Morrison</u>, No. CIV.A. 06-3000, 2010 WL 701799 (E.D. Pa. Feb. 24, 2010)).

99.     Deprivation of another's right of property in, or use of possession, occurs in four ways: "1) acquiring possession of property with the intent to assert a right to it adverse to the owner; 2) transferring the property and therefore depriving the owner of control; 3) unreasonably withholding possession of the property from the one who has the right to it; and 4) misusing or seriously damaging the property in defiance of the owner's rights." <u>Fenton v. Balick</u>, 821 F. Supp. 2d 755, 760 (E.D. Pa. 2011); <u>Fort Washington Res., Inc. v. Tannen</u>, 846 F.Supp. 354, 361 (E.D.Pa.1994) (citing <u>Norriton E. Realty Corp. v. Central–Penn. Nat'l Bank</u>, 435 Pa. 57, 254 A.2d 637, 638 (1969)).

100.     Under Pennsylvania law, money may be the subject of conversion, designating it a chattel, when there is a property interest in it at the time of the conversion. <u>Kia v. Imaging Scis. Intern., Inc.</u>, 735 F. Supp. 2d 256, 270 (E.D. Pa. 2010).

101.     Consent occurs when the owner of the chattel expresses permission to another to obtain possession of said chattel. <u>Al Makaaseb Gen. Trading Co. v. U.S. Steel Intern., Inc.</u>, 412 F. Supp. 2d 485, 501 (W.D. Pa. 2006).

102.     Obtaining possession of a chattel is not legally justified when the "intent to exercise dominion or control over goods… [is] inconsistent with the owner's rights." <u>Fed. Ins. Co. v. Ayers</u>, 772 F. Supp. 1503, 1510 (E.D. Pa. 1991).

103.     Up until August 16, 2022, at approximately 12:09 PM, Plaintiff had exclusive and actual possession of $250,000.00.

104.     Since at least August 16, 2022, but in no event later than September 14, 2022, Defendants have deprived Plaintiff's right in and use of Plaintiff's $40,000 by, among other things, fraudulently inducing Plaintiff to wire the money to an account

controlled by them and transferring it to a bank account now owned or controlled by Defendants.

105.    At no point did Plaintiff consent to Defendants exercising dominion and control over Plaintiff's $250,000.00 or Plaintiff's $40,000.00.

106.    Plaintiff's transfer of the $250,000 to Defendants was done under false pretenses and as a result of fraud as outlined herein.

107.    Defendants do not have a lawful justification for exercising dominion and control over Plaintiff's $40,000.00 because Plaintiff wired the initial $250,000.00 with the intent for it to go to the real Todd Laury. Upon finding out that that the money was fraudulently received, Plaintiff filed a report to reobtain possession of the money, in which $40,000.00 of it was not recoverable, as it was in the possession, custody, and control of Defendant UD 2 and/or Defendant UD 1. The possession of the $40,000.00 is inconsistent with Plaintiff's right to possession.

108.    Defendants have wrongfully appropriated unto themselves Plaintiff's property by, among other actions, improperly and illegally seizing and concealing Plaintiff's $40,000.

109.    At the time of their conversion of Plaintiff's property, Defendants knew their actions were unlawful.

110.    Defendants' actions in converting Plaintiff's property were made with the specific intent to defraud Plaintiff and to convert Plaintiff's $40,000 and to deprive Plaintiff of its lawful dominion and control over the same.

111.    A court may award punitive damages "for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others." Penn Elec. Supply Co. v. Billows Elec. Supply Co., 364 Pa. Super. 544, 552 (1987).

112.    Defendants acted with reckless indifference as to Plaintiff's right in both the $250,000.00 and $40,000.00 by, among other things, taking the actions listed in Count I of this Complaint.

113.   The statute of limitations for conversion in Pennsylvania is two years. 42 Pa. Stat. § 5524(3); <u>Mariner Chestnut Partners, L.P. v. Lenfest</u>, 152 A.3d 265, 277 (Pa. Super Ct. 2016).

114.   The limitations period for Count II has not expired.

115.   As a direct and proximate result of Defendants' actions described herein, Plaintiff is entitled to recover from Defendants, $40,000.00 in actual/compensatory damages as well as consequential and punitive damages in an amount to be demonstrated at trial.

**<u>COUNT III</u>**

**FRAUDULENT INDUCEMENT / FRAUDULENT MISREPRESENTATION / INTENTIONAL NON-DISCLOSURE**

116.   Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

117.   In Pennsylvania, the torts of fraudulent inducement and fraudulent misrepresentation have the same elements:

a.   "To recover on a claim of fraudulent inducement Pennsylvania 'requires proof of the following elements . . . (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with the knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.'" <u>Reville Tire Co. v. Ranalli</u>, No. CV 15-1036, 2017 WL 4224658, at *10 (W.D. Pa. Sept. 21, 2017) (quoting <u>EBC, Inc. v. Clark Bldg. Sys., Inc.</u>, 618 F.3d 253, 275 (3d Cir. 2010); citing <u>Eigen v. Textron Lycoming Reciprocating Engine Div.</u>, 874 A.2d 1179, 1185 (Pa. Super Ct. 2005)).

b.   "To recover on a claim of fraudulent misrepresentation, 'the plaintiff must prove . . . (1) a representation; (2) which is material to the

transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.'" <u>Busy Bee Inc. v. Corestates Bank N.A.</u>, 67 Pa. D. & C.4th 496, 512 (Com. Pl. 2004) (quoting <u>Goldstein v. Phillip Morris, Inc.</u>, 854 A.2d 585, 590-91 (Pa. Super Ct. 2004)).

118.    "'The tort of intentional non-disclosure has the same elements as intentional misrepresentation "except in the case of non-disclosure, the party intentionally conceals a material fact rather than making an affirmative misrepresentation."' <u>Revile Tire Co.</u>, 2017 WL 4224658, at *10 (quoting <u>Bortz v. Noon</u>, 729 A.2d 555, 560 (Pa. 1999)).

### *Fraudulent Inducement / Fraudulent Misrepresentation*

119.    A material representation is one where "it is of such a character that if it had not been made, the transaction would not have been entered into." <u>Silverman v. Bell Sav. & Loan Ass'n</u>, 533 A.2d 110 (Pa. Super. 1987); (quoting <u>Delahanty v. First Pennsylvania Bank, N.A.</u>, 464 A.2d 1243, 1252 (Pa. Super. 1983)).

120.    A representation is made falsely when it is "the positive statement of a falsehood" or "the suppression of material facts which the other party ought to know." <u>Huber v. Wilson</u>, 23 Pa. 178, 179 (Pa. 1854).

121.    Misleading another into relying on the representation occurs when the statements are made "with the knowledge that the plaintiff would believe and rely thereon." <u>Savitz v. Weinstein</u>, 149 A.2d 110 (Pa. 1959).

122.    Reliance on the misrepresentation is demonstrated through "showing that he[/she] was aware of a company's statement and engaged in a relevant transaction… based on that specific misrepresentation." <u>Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.</u>, 176 F. Supp. 3d 387 (D. Del. 2016) (quoting <u>McCabe v. Ernst & Young LLP</u>, 494 F.3d 418, 425 (3d Cir.2007)).

123.   Defendant   UD   1   made   multiple   fraudulent/misrepresentations including, but not limited to, his representation in the Fraud Email that he was the real Todd Laury and his representations in the emails attached hereto as **Ex. D** wherein he represented that he was the real Todd Laury, when it was in fact, not the proper entity not it had a legal interest in Sirens.

124.   Defendant UD 2 made multiple representations including, but not limited to, representing itself as the proper entity to receive funds for the purchase of Sirens contained in the Fraud Email.

125.   Defendant UD 1 created the imposter email account laury.tod@[omitted] to mimic the email belonging to the owner of the Sirens club, Todd Laury. He did so knowingly and with the intent that Plaintiff would not notice the difference between the two email accounts and, therefore, would follow the most recent wiring and payment instructions sent by Defendant UD 1 and/or Defendant Ud 2 and not Todd Laury. Defendants UD 1 and/or UD 2 used this imposter email account to correspond with Plaintiff on numerous occasions pretending to conduct normal business related to the sale of Sirens that Plaintiff was expecting. The Fraud Email containing false payment instructions directly pertained to the transaction that Plaintiff and the real Todd Laury were engaged in. Plaintiff reasonably relied upon the Fraud Email as it came from an email address that was only one letter different than the email they had previously been corresponding with and contained nearly identical language as the original wiring instructions sent by Todd Laury so as to deceive Plaintiff into wiring funds to an account not owned by Todd Laury. Because of the reliance on the Fraud Email, Defendants successfully came into control, and permanent possession, of $40,000 of Plaintiff's money.

126.   The representations made in paragraphs 123-125 were made with knowledge of their falsity because Defendant UD 1 knew that he was not the real Todd Laury yet represented himself to Plaintiff as the real Todd Laury, and

Defendant UD 2 knew it did not own Sirens such that it could convey good title to, or assets of, the same in exchange for the $250,000.00 that it request in the Fraud Email.

127.   The representations made in paragraphs 123-125 were made with the intent that Plaintiff would believe and rely on the idea that Plaintiff was actually in communication with the real Todd Laury. Further, the representations were made with the intent to cause Plaintiff to wire $250,000.00 to Defendants in the mistaken belief that Plaintiff was wiring funds to the proper recipient for the purchase of Sirens.

128.   Plaintiff justifiably relied on the representations made by Defendants. Plaintiff had previously been conversing with the real Todd Laury in regard to the purchase of Sirens when the communications between Defendant UD 1 regarding the same subject matter began using a decoy email account, the imposter email account. By employing an email address only one letter off from the real Todd Laury's email address, and by mimicking the real Todd Laury's wiring instructions, Plaintiff had no reason to suspect that it was being defrauded as, to Plaintiff, the new wiring instructions seemed to be a continuation of Plaintiff's conversations regarding the purchase of Sirens. Defendant's representations were material because had Plaintiff known the Fraud Emails' wiring instructions directed the purchase funds for Sirens not to the true owner, Todd Laury, but, rather, to Defendants, Plaintiff would not have wired the $250,000.00.

129.   As a direct and proximate result of Defendants' fraudulent misrepresentation, and Plaintiff's reliance on the same, Plaintiff, to its detriment, wired $250,000.00 to Defendants and not Todd Laury for the purchase of Sirens. Though Plaintiff was able to recover $210,000.00, Defendants remain in possession, custody, and control of $40,000.00 of fraudulently obtained funds belonging to Plaintiff.

*Intentional Non-Disclosure*

130.   Intentional non-disclosure contains the same elements as fraudulent inducement/misrepresentation, with the exception that instead of showing an affirmative misrepresentation, an intentional concealment of a material fact must be shown. Gaines v. Krawczyk, 354 F. Supp. 2d 573, 587 (W.D. Pa. 2004).

131.   Under Pennsylvania law, intentional concealment of a material fact arises when there is a duty to speak created by a fiduciary or confidential relationship between the two parties. Montgomery County v. Microvote Corp., CIV.A. 97-6331, 2000 WL 341566, at *2 (E.D. Pa. Mar. 31, 2000). "A confidential relationship arises when the relative position of the parties results in a situation in which one party has power and means to take advantage of or exercise undue influence over the other." Id.

132.   Defendant UD 1 created a confidential relationship with Plaintiff when he engaged in fraudulent correspondence with Plaintiff regarding the sale of Sirens including, but not limited to, the Fraud Email, as well as the emails regarding various utilities at Sirens, attached hereto as **Ex. D**. Defendant UD 1, in directing Plaintiff to wire $250,000.00 into Defendant UD 2's account, held power over Plaintiff as the recipient of the funds intended for the real Todd Laury. Defendant UD 1 had a duty to disclose his true identify, but instead intentionally chose to conceal his true identity.

133.   Defendant UD 2 created a confidential relationship with Plaintiff when it represented itself to Plaintiff as the proper recipient of the funds intended for the purchase of Sirens. It knew that it could not convey good title to, or assets of, Sirens yet represented to Plaintiff that it was the proper recipient of the funds for the purchase of Sirens in the Fraud Email. Defendant UD 2. held power over Plaintiff as the recipient of the funds intended for the real Todd Laury. Defendant UD 2 had a

duty to disclose its true identity, but instead intentionally chose to conceal its true identity.

134.    The statute of limitations for fraudulent inducement, fraudulent misrepresentation, and intentional non-disclosure is two years. 42 Pa. Stat. § 5524(7); Aubrey v. Santora, No. 1476 WDA 2013, 2014 WL 10575403, at *4 (Pa. Super. Ct. Sept. 17, 2014) ("The trial court correctly notes that the statute of limitations for claims based in fraud, including fraudulent inducement, is two years."); Est. of Grier ex rel. Grier v. Univ. of Pennsylvania Health Sys., No. CIV.A. 07-4224, 2009 WL 1652168, at *4 * 8 (E.D. Pa. June 11, 2009) (two-year limitations period for, among other claims, intentional non-disclosure).

135.    The limitations period for Count III has not expired.

136.    Punitive damages may be awarded in fraud claims. SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 206 (3d Cir. 2022) ("A successful fraud plaintiff may also recover punitive damages.").

137.    To justify awarding punitive damages, "there must be acts of malice, vindictiveness and a wholly wanton disregard for the rights of others." George M. Axilbund Tr. V. Forman, 268 A.3d 433, *4 (Pa. Super. Ct. 2021) (table) (quoting Pittsburg Live, Inc. v. Servov, 615 A.2d 438, 442 (Pa. Super. Ct. 1992)).

138.    The elements of "malice, vindictiveness and wanton disregard' of another's rights . . . does not necessarily mean a malignant scheming against another person. It encompasses that kind of conduct which is so wholly reckless of another's rights as to call for a monetary penalty." Richette v. Solomon, 410 Pa. 6, 16-17, 187 A.2d 910, 916 (Pa. Super. Ct. 1963).

139.    Defendant UD 1 acted with malice, vindictiveness, and wanton disregard for Plaintiff's rights when he knowingly alleged he was the real Todd Laury, sent incorrect wiring instructions in order to intentionally to deprive Plaintiff of the money necessary to purchase the legal right to title of Sirens and its assets, and

communicated with Plaintiff regarding Siren's utilities and signed each email as "TL." Additionally, Defendant Ud 1's deliberate actions resulted in the loss of Plaintiff's right of possession of the $40,000.00.

140.   Defendant UD 2 acted with malice, vindictiveness, and wanton disregard for Plaintiff's rights when it knowingly included its bank account information in the Fraud Email so as to induce Plaintiff to wire the funds for the purchase of Sirens to Defendant UD 2 and not to the true owner of Sires, Todd Laury. Additionally, Defendant UD 2's deliberate actions resulted in the loss of Plaintiff's right of possession of the $40,000.00.

141.   As a direct and proximate result of Defendants' actions described herein Plaintiff is entitled to recover from Defendants $40,000.00 in actual/compensatory damages as well as an amount to be demonstrated at trial in consequential and punitive damages in an amount to be demonstrated at trial.

## COUNT IV

### TORTIOUS INTERFERENCE WITH AN EXISTING CONTRACT / BUSINESS RELATIONS

142.   Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

143.   "'Under Pennsylvania law, to prevail on a claim for tortious interference with existing or prospective contractual relationships, a party must prove: (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.'" Our Town v.

Rousseau, No. 3:16-CV-2484, 2017 WL 34698, at *7 n.7 (M.D. Pa. Jan. 3, 2017) (quoting Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009)).

144.   A contract for the purchase of Sirens existed between ARC Production, LLC, a company wholly owned by Alan Chang, who also wholly owns Plaintiff, and the real Todd Laury, and was entered into on October 11, 2022. The purchase agreement is attached hereto as **Ex. B**.

145.   Plaintiff, as the payor on behalf of ARC productions, LLC, was in an economic relationship with Todd Laury and WTC Management, LLC.

146.   Defendants UD 1 and UD 2 sent the Fraud Email to purposefully prevent Todd Laury from receiving the $250,000.00 as payment for Sirens thereby preventing proper payment for the nightclub.

147.   Defendants UD 1 and UD 2 purposefully placed malware onto Plaintiff's computer systems to intercept email traffic between the buyer and seller of Sirens.

148.   Defendants UD 1 and UD 2, sent the Fraud Email to purposefully defraud and misappropriate the $250,000.00 payment for Sirens.

149.   Todd Laury was the intended party recipient of the purchase funds for the purchase of Sirens.

150.   Defendants UD 1 and UD 2 were not intended parties to the transaction for the purchase of Sirens and were, therefore, without privilege or justification for interfering with the sale of Sirens in numerous and various ways.

151.   As a direct and proximate result of Defendants' actions described herein, Plaintiff has been harmed by the loss of $40,000.00 that was fraudulently taken from Plaintiff.

152.   The statute of limitations for "contractual interference is subject to a two-year statute" of limitations. Maverick Steel Co. v. Dick Corp./Barton Malow, 54 A.3d 352, 355 (Pa Super Ct. 2012).

153.    The limitations period for Count IV has not expired.

154.    As a direct and proximate result of Defendants' actions described herein, Plaintiff is entitled to recover from Defendants, $40,000.00 in actual damages.

## COUNT V

### INJUNCTIVE RELIEF / FREEZING OF REMAINING FUNDS

155.    Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

156.    Upon information and belief, Defendants transferred the $40,000.00 of fraudulently obtained funds from TD Bank account number XXX-XXX-0036 to another account owned and/or controlled by Defendants, or either of them, or to an account owned and/or controlled by an associate of Defendants.

157.    Unless and until Plaintiff is able to take discovery, Plaintiff will not and cannot know whether any of the $40,000.00 remains in some type of financial institution or financial account, and, if so, the location of those funds.

158.    Under this Cause of Action, Plaintiff seeks immediate injunctive relief to freeze those funds until this matter is decided on the merits and, once Plaintiff is able to determine whether any amounts of these funds still exist and, if so, where they are located, Plaintiff respectfully requests that this Honorable Court enter both a Temporary Restraining Order and preliminary injunction to prevent anyone, including Defendants, from withdrawing or otherwise accessing the remaining funds.

### PRAYER FOR RELIEF

**WHEREFORE**, for the foregoing reasons, Plaintiff prays that this Honorable Court enter judgment against the Defendants, which would include:

A.    Entry of an immediate Temporary Restraining Order and preliminary injunction freezing the any portions of the $40,000.00 of funds Defendants fraudulently obtained from Plaintiff that were not previously recovered such that no

person or entity may access these funds until such a time as the Court is able to adjudicate this matter on the merits;

B.    Entry of an award against the Defendants, jointly and severally, and in favor of Plaintiff in the amount of $120,000.00, in actual/compensatory and liquidated/statutory damages pursuant to 18 U.S.C. § 1964(c);

C.    Entry of an award of attorneys' fees and costs against the Defendants, jointly and severally, and in favor of Plaintiff pursuant to 18 U.S.C. § 1964(c);

D.    Entry of an award of punitive damages against the Defendants and in favor of Plaintiff in an amount to be determined at trial; and

E.    Such other and further relief as this Court may find to be just and proper in these circumstances.


Dated: December 22,  2023                         Respectfully Submitted,

                                                **PASQUALE J. COLAVITA, P.C.**

                                                  *s/ Pasquale J. Colavita*
                                                Pasquale J. Colavita, Esq. (76369)
                                                **PASQUALE J. COLAVITA, P.C.**
                                                1026 Winter Street, Ste. 300B
                                                Philadelphia, PA 19107
                                                T: 215-351-5300
                                                F: 215-949-5567
                                                E: pcolavita@gmail.com


                                                **SHAFER & ASSOCIATES, P.C.**

                                                Zachary M. Youngsma (MI P84148)*
                                                **SHAFER & ASSOCIATES, P.C.**
                                                3800 Capital City Blvd., Ste. 2
                                                Lansing, Michigan 48906
                                                T: 517-886-6560
                                                F: 517-886-6565
                                                E: Zack@BradShaferLaw.com

                                                *Application for Admission Pro Hac Vice forthcoming*

                                                *Attorneys    for    Plaintiff    Chang's Dynasty, LLC*

## DEMAND FOR JURY TRIAL

Plaintiff Chang's Dynasty, LLC, by counsel and pursuant to Fed. R. Civ. P. 38, hereby demands a trial by jury of any issues so triable.

Dated: December 22, 2023                  Respectfully Submitted,

**PASQUALE J. COLAVITA, P.C.**

*s/ Pasquale J. Colavita*

Pasquale J. Colavita, Esq. (76369)
**PASQUALE J. COLAVITA, P.C.**
1026 Winter Street, Ste. 300B
Philadelphia, PA 19107
T: 215-351-5300
F: 215-949-5567
E: pcolavita@gmail.com

**SHAFER & ASSOCIATES, P.C.**

Zachary M. Youngsma (MI P84148)*
**SHAFER & ASSOCIATES, P.C.**
3800 Capital City Blvd., Ste. 2
Lansing, Michigan 48906
T: 517-886-6560
F: 517-886-6565
E: Zack@BradShaferLaw.com

*Application for Admission Pro Hac Vice forthcoming*

*Attorneys for Plaintiff Chang's Dynasty, LLC*

**VERIFICATION OF COMPLAINT AS TO:**
**Chang's Dynasty, LLC**

1.      I, Alan Chang, am the sole owner of Chang's Dynasty, LLC.

2.      I make this verification upon my personal knowledge unless specifically stated to the contrary.

3.      I have reviewed the foregoing *PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF* (the "Complaint") in its entirety.

4.      The factual statements in the Complaint are true and accurate to the best of my information, knowledge, and belief.

5.      Except any matters stated to be upon "information and belief," I verily believe to be true.

**I VERIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT**

Executed on: _____11/12/2023_____

By:    Alan Chang